IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| U.S. SILICA COMPANY,<br><br>*Plaintiff*,<br><br>v.<br><br>AMBERGER KAOLINWERKE EDUARD KICK GMBH & CO. KG,<br><br>*Defendant*. | § § § § § § § § § § § § § CIVIL ACTION NO. 2:20-CV-00298-JRG |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff U.S. Silica Company's ("U.S. Silica") Partial Motion to Dismiss AKW's Counterclaims to U.S. Silica's First Amended Complaint (the "Motion"). (Dkt. No. 55). In the Motion, U.S. Silica argues that Defendant Amberger Kaolinwerke Eduard Kick GmbH & Co. KG's ("AKW") Counterclaims Thirteen, Fourteen, and Fifteen should be dismissed under Fed. R. Civ. P. 12(b)(6). For the reasons set forth herein, the Court finds that U.S. Silica's Motion should be **DENIED IN PART** and **CARRIED IN PART**.

### I.   BACKGROUND

U.S. Silica filed the above-captioned action on September 8, 2020 alleging patent infringement against AKW. U.S. Silica filed its First Amended Complaint on August 10, 2021 (the "First Amended Complaint"). (Dkt. Nos. 42, 45). The First Amended Complaint alleged AKW infringed U.S. Patent Nos. 8,865,303 (the "'303 Patent"); 9,303,407 (the "'407 Patent"); 9,714,512 (the "'512 Patent"); 10,145,115 (the "'115 Patent"); 10,724,245 (the "'245 Patent"); and 10,253,493 (the "'493 Patent") (collectively, the "Asserted Patents"). (Dkt. No. 42 ¶ 1). Five of the Asserted Patents are particularly relevant to this Motion: '303 Patent, '407 Patent, '512

Patent, '115 Patent, and '245 Patent (collectively, the "Roofing Patents"). The Roofing Patents generally relate to cool-roofing systems that rely on calcined kaolin granules to reflect solar energy. (*Id.* ¶¶ 1–4). The named inventors of the Roofing Patents are Mr. Sexauer and Mr. Kolb (the "Named Inventors"). The Named Inventors allegedly approached AKW around August 2009 for help developing certain coatings to use on a cool roof system. (Dkt. No. 48 ¶ 24). Dr. Michael Mirke, one of AKW's chief chemical engineers, worked with the Named Inventors during their research and development of what eventually became the invention disclosed in the Roofing Patents. (*Id.* ¶¶ 29, 39). In its Answer and Counterclaims to U.S. Silica's First Amended Complaint (the "Answer"), AKW asserts a counterclaim for inequitable conduct, arguing that given Dr. Mirke's contributions, he should have been a named inventor on the Roofing Patents. (*Id.* ¶¶ 154–85). AKW's Answer also alleges counterclaims of Tortious Interference with Current and Prospective Business Relations and Contracts and Unfair Competition related to U.S. Silica's alleged contacts with AKW's current and prospective customers regarding U.S. Silica's patents and this lawsuit. (*Id.* ¶¶ 186–208).

## II.    LEGAL STANDARD

Under the Federal Rules of Civil Procedure, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A Court can dismiss a complaint that fails to meet this standard. Fed. R. Civ. P. 12(b)(6). To survive dismissal at the pleading stage, a complaint must state enough facts such that the claim to relief is plausible on its face. *Thompson v. City of Waco*, 764 F.3d 500, 502 (5th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads enough facts to allow the Court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court

accepts well-pleaded facts as true, and views all facts in the light most favorable to the plaintiff, but is not required to accept the plaintiff's legal conclusions as true. *Id.*

In the Fifth Circuit, motions to dismiss under Rule 12(b)(6) are viewed with disfavor and rarely granted. *Lormand v. US Unwired*, Inc., 565 F.3d 228, 232 (5th Cir. 2009); *Lowrey v. Texas A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997). The Court must limit its review "to the contents of the pleadings." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000).

Inequitable conduct must be pled with greater specificity under Fed. R. Civ. P. 9(b) than other claims. *Exergen Corp. v. Wal–Mart Stores, Inc.*, 575 F.3d 1312, 1327 (Fed. Cir. 2009). Rule 9(b) states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." *See* Fed. R. Civ. P. 9(b). In determining whether inequitable conduct has been properly pled under Rule 9(b), the Court looks to Federal Circuit law. *Exergen*, 575 F.3d at 1326. For inequitable conduct, "Rule 9(b) requires identification of the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Id.* at 1327.

### III.  DISCUSSION

#### A.  AKW's Thirteenth Counterclaim (Inequitable Conduct)

U.S. Silica argues that AKW has not complied with the heightened pleading requirements demanded by Rule 9(b). (Dkt. No. 55 at 5). U.S. Silica argues that AKW "pleads no facts as to what Mirke (or anyone else) supposedly contributed to these inventions that would justify inclusion as an inventor." (*Id.* at 6). U.S. Silica argues that AKW's allegations amount to allegations of general skill in the art but fail to show that Dr. Mirke contributed to the conception of the claimed cool roofing system. (*Id.* at 9). U.S. Silica also argues that AKW "does not allege that Mirke, individually, conceived of **the cool roofing system** of the [Roofing] Patents." (*Id.* at

3

10). U.S. Silica also argues that AKW's reliance on the AS 45 granules is misplaced because "the specification itself is clear that AS 45 is only one kind of bright white and highly reflective calcined kaolin that may be used in the claimed invention." (*Id.* at 12). U.S. Silica also argues that AKW does not plead any facts showing a material representation or omission to the PTO or any knowledge or intent to deceive the PTO. (*Id.* at 12–14).

AKW responds that, with respect to inequitable conduct, it is a material misrepresentation to omit joint inventors from a patent. (Dkt. No. 72 at 6). AKW argues that by omitting Dr. Mirke, who contributed substantially to the claimed invention, U.S. Silica made a material misrepresentation. (*Id.* at 11–12). AKW also argues that it has sufficiently pled the "who, what, when where, and how" of the Named Inventors' allegedly inequitable conduct. (*Id.* at 10–11). AKW also argues that it has sufficiently pled an intent to device the Examiner by the Named Inventors' failure to disclose the contributions of AKW and its engineers to the PTO. AKW also argues that it has sufficiently pled improper inventorship with respect to Dr. Mirke's contributions.

The Court finds that AKW has met its burden at the pleading stage—even with the heightened requirement provided by Rule 9(b). AKW's Answer provides a lengthy recitation of what it alleges is the invention story. In particular, AKW has alleged that Dr. Mirke and AKW[1] "conceive[d] of and reduce[d] to practice the qualities and processes for engineering the ideal granules for the demanded purpose by using its domain expertise, negative know-how, and proprietary development and testing procedures." (Dkt. No. 48 ¶ 30). AKW contends that the

---

[1] U.S. Silica argues that because AKW does not specifically list all the individuals involved in AKW's contribution and the particular claim elements those AKW individuals contributed to, AKW's allegations fail to meet the Rule 9(b). (Dkt. No. 55 at 9–11; Dkt. No. 74 at 2). U.S. Silica cites *Fina Oil and Chemical Co. v. Ewen*, 123 F.3d 1466 (Fed. Cir. 1997) for this proposition. That case arrived at the Federal Circuit after the district court granted summary judgment regarding inventorship and therefore does not mention Rule 9(b). *Fina*, 123 F.3d at 1473. Accordingly, U.S. Silica cites no substantive authority that AKW must have a complete and comprehensive inventorship theory disclosed at the pleadings stage under Rule 9(b). As explained, the Court finds that AKW has met the standard under Rule 9(b) as explained by the Federal Circuit in *Exergen*.

specific treatments, test, and processes that went into the Roofing Patents were developed by AKW before it even started working with U.S. Silica. (*Id.* ¶ 31–33). AKW alleges that this invention story is directly contrary to the declarations submitted to the PTO that "granules of calcined Chamotte AS 45 were prepared" "[u]nder [Mr. Sexauer's] direction, and with collaboration with [his] co-inventor, Mr. Kolb." (*Id.* ¶ 175; *see also id.* ¶¶ 54, 160, 164, 166–68, 176). In other words, AKW alleges that by omitting AKW's contributions—which the Named Inventors clearly knew about—the Named Inventors knowingly submitted a false declaration to the PTO in the prosecution of the Roofing Patents. (*Id.* ¶¶ 154, 178). The Court finds this detailed allegation sufficient to plead an intentional material misrepresentation or omission under Rule 9(b).

U.S. Silica attempts to rely on *Exergen* to argue that AKW has not sufficiently pled an intent to deceive under Rule 9(b). There, the party pleading inequitable conduct applied the law of the First Circuit instead of the Federal Circuit, which the Federal Circuit held was improper. *Exergen*, 575 F.3d at 1326. In holding that Federal Circuit law applied, the Federal Circuit summarized its jurisprudence by stating:

> In sum, to plead the "circumstances" of inequitable conduct with the requisite "particularity" under Rule 9(b), the pleading must identify the specific **who, what, when, where, and how** of the material misrepresentation or omission committed before the PTO. Moreover, although "knowledge" and "intent" may be averred generally, a pleading of inequitable conduct under Rule 9(b) must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO.

*Id.* at 1328–29 (emphasis added). The Federal Circuit held that the inequitable conduct pleading was deficient because it did not identify:

(1) "**who** both knew of the material information and deliberately withheld or misrepresented it";

5

(2) "which claims, and which limitations in those claims, the withheld references are relevant to, and where in those references the material information is found—i.e., the '*what*' and '*where*' of the material omissions."; and

(3) "'*why*' the withheld information is material and not cumulative, and '*how*' an examiner would have used this information in assessing the patentability of the claims."

*Id.* at 1329–30 (emphasis added). The Court disagrees with U.S. Silica and finds that AKW has met the *Exergen* standard. Specifically, AKW has alleged that:

(1) The Named Inventors and Prosecution Counsel[2] "intentionally misrepresented the Named Inventors' roles as inventors and failed to disclose AKW's engineers and scientists, including Dr. Mirke, as co-inventors" (Dkt. No. 48 ¶¶ 155–59, 172–73, 182–85);

(2) The Named Inventors "submitted [to the PTO during prosecution] an intentionally misleading declaration that the technical preparation of the kaolin clay noodles, the temperature range to heat the kaolin, the need to crush rather than grind the kaolin particles, and the need to screen the kaolin particles within the 0.3-2.4 mm range were conducted 'under [the Named Inventors'] direction'" (*Id.* ¶¶ 175, 178–79); and

(3) The Examiner was accordingly not apprised of the contributions by Dr. Mirke and AKW due to the false and misleading declaration submitted by the Named Inventors and Prosecution Counsel (*Id.* ¶¶ 174–75).

---

[2] AKW defines "Prosecution Counsel" as "the named attorneys at the law firms of Faegre Benson, Kagan Binder, Irell & Manella, and Lewis Roca who prosecuted the Roofing [] Patents." (Dkt. No. 72 at 10).

As shown above and unlike in *Exergen*, AKW provides detailed allegations that permit the Court to reasonably infer that the Named Inventors or Prosecution Counsel "knew of the withheld material information or of the falsity of the material misrepresentation, and withheld or misrepresented this information with a specific intent to deceive the PTO." 575 F.3d at 1328–29.

Accordingly, the Court finds AKW has adequately pled its inequitable conduct counterclaim under Rule 9(b), and U.S. Silica's Motion is **DENIED** with respect to AKW's Thirteenth Counterclaim.

      **B.**    **AKW's Fourteenth Counterclaim (State Law Tortious Interference)**

"The theory of tortious interference with business relations by a third person includes two causes of action: (1) tortious interference with existing contracts, and (2) tortious interference with prospective contractual relations." *Dunn v. Calahan*, Case No. 03-05-00426-CV, 2008 WL 5264886, at *3 (Tex. App.—Austin Dec. 17, 2008, pet. denied) (mem. op.) (citing *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 689 (Tex. 1989)). The Court addresses both theories raised in the pleadings.

**Tortious Interference with Existing Business Relations:** To plead a plausible claim for tortious interference with existing contracts, AKW must allege facts demonstrating: "(1) an existing contract subject to interference; (2) a willful and intentional act of interference with the contract; (3) that proximately caused the plaintiff's injury; and (4) caused actual damages or loss." *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000); *Gibson Brands, Inc. v. Armadillo Distribution Enterprises, Inc.*, Case No. 4:19-CV-00358, 2020 WL 3453164, at *3 (E.D. Tex. Jun. 24, 2020).

U.S. Silica argues that AKW's complaint fails to state a claim for tortious interference with existing contracts because AKW does not allege that U.S. Silica had knowledge of the agreement and intended to induce a breach. (Dkt. No. 55 at 16). U.S. Silica argues that AKW's alleged

"threats" are conclusory and insufficient to give rise to this claim. (*Id.*). U.S. Silica also argues that AKW failed to "plead specific facts illustrating the alleged interference caused some third party to breach its contractual duties." (*Id.* at 17). U.S. Silica contends that AKW's claim of damages is conclusory and does not identify any "alleged losses caused by the breach of an existing contract." (*Id.*).

AKW responds that U.S Silica does not contend that AKW failed to plead the existence of a contract. (Dkt. No. 72 at 20). AKW argues that U.S. Silica "openly admits that it specifically targeted AKW's customers with threats of patent infringement," which "went beyond merely putting AKW's customers on notice of patent infringement." (*Id.*). AKW contends that U.S. Silica's own complaint acknowledges that U.S. Silica knew about AKW's contract with at least U.S. Ply. (*Id.* at 21) (citing Dkt. No. 45 ¶ 17(a)). AKW argues that it is sufficient to allege facts supporting an inference of U.S. Silica's intent to interfere with AKW's business expectancy, which it has done by showing "U.S. Silica was aware of and intended to interfere with AKW's business expectancy with its current and potential customers by sending them cease and desist letters and threatening suit." (*Id.*) (citing Dkt. No. 48 ¶¶ 187, 189–194). AKW argues that its statement that it "suffered damages" is sufficient at this stage and that AKW alleged that those damages were caused by U.S. Silica's intentional threats to AKW's customers. (*Id.* at 20–21) (citing *Luminati Networks Ltd. v. Teso LT, UAB*, Case No. 2:19-CV-00395, 2020 WL 6803256, *6 (E.D. Tex. Jul. 15, 2020); Dkt. No. 48 ¶¶ 91, 190, 195, 197).

U.S. Silica responds in its reply that the critical defect here is that "AKW fails to allege facts showing that U.S. Silica caused a third party to breach a contract." (Dkt. No. 74 at 8).

The Court finds that AKW has properly pled tortious interference with existing contracts. Based on the pleadings, AKW has alleged facts that make its tortious interference claim plausible.

U.S. Silica acknowledged that AKW had contracts with third parties in U.S. Silica's own complaint. (Dkt. No. 45 ¶ 17(a)). AKW alleged it had relationships with those third parties that were never completed. (Dkt. No. 48 ¶¶ 189–191). AKW alleges that statements intentionally made by U.S. Silica interfered with said current business relationships and AKW suffered damages as a result of the intentional statements. (*Id.* ¶¶ 91, 187, 189–95, 197). This is adequate at the pleadings stage.

Accordingly, the Court finds AKW has adequately pled its claim for tortious interference with existing contracts, and U.S. Silica's Motion is **DENIED** in this regard.

**Tortious Interference with Prospective Business Relations:** Tortious interference with prospective business relations requires (1) a reasonable probability AKW would have entered a contractual relationship with a third party; (2) U.S. Silica either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; (3) U.S. Silica's conduct was independently tortious or unlawful; (4) proximate causation; and (5) AKW suffered actual damage or harm as a result of U.S. Silica's interference. *Sanger Ins. Agency v. HUB Int'l, Ltd.*, 802 F.3d 732, 748–49 (5th Cir. 2015).

The parties' arguments with respect to this claim largely mirror their arguments with respect to tortious interference with existing contracts. The significant difference is whether AKW alleged independently tortious conduct by U.S. Silica. (Dkt. No. 55 at 19–20; Dkt. No. 72 at 23; Dkt. No. 74 at 9). In particular, U.S. Silica argues that AKW's "most glaring defect here is that AKW never alleges independently tortious conduct by U.S. Silica." (Dkt. No. 74 at 9). U.S. Silica argues that "patent holders are not subject to tort liability for enforcing or threatening to enforce their patent rights." (*Id.*) (citing *Mikohn Gaming Corp. v. Acres Gaming, Inc.*, 165 F.3d 891 (Fed.

9

Cir. 1998)).  Here, the parties dispute whether U.S. Silica's contacts with AKW's prospective customers were simply U.S. Silica's notice of its patent rights or something more.  It is improper for the Court to resolve that factual dispute at the pleadings stage.  AKW has alleged threats to its customers that went beyond patent infringement.  (Dkt. No. 48 ¶¶ 187, 189–194).  That is adequate at this stage of the case.

Accordingly, the Court finds AKW has adequately pled its claim for tortious interference with prospective relationships, and U.S. Silica's Motion is **DENIED** in this regard.

### C.    AKW's Fifteenth Counterclaim (State Law Unfair Competition)

The Court questions whether "unfair competition" is a separate cause of action under Texas law, and neither party has contended that the laws of another state apply.  Both parties acknowledge that under Texas law, "unfair competition" refers to a category of tortious conduct arising out of business conduct. (Dkt. No. 55 at 21; Dkt. No. 72 at 25; Dkt. No. 74 at 10).  However, the parties' briefing is unclear whether "unfair competition" under Texas law is its own doctrine or cause of action such that a party can bring a claim for "unfair competition" or if it simply refers to a range of possible causes for which relief may be distinctly recoverable.  *See U.S. Sporting Prods., Inc. v. Johnny Stewart Game Calls, Inc.,* 865 S.W.2d 214, 217 (Tex. App.—Waco 1993, writ denied).

Accordingly, U.S. Silica's Motion is **CARRIED** in this regard until further briefing is complete as outlined below.

### IV.    CONCLUSION AND ORDER

For the reasons set forth above U.S. Silica's Motion is **DENIED** with respect to AKW's Thirteenth Counterclaim (Inequitable Conduct) and AKW's Fourteenth Counterclaim (State Law Tortious Interference) and **CARRIED** with respect to AKW's Fifteenth Counterclaim (State Law Unfair Competition).

Further, it is **ORDERED** that the U.S. Silica and AKW shall separately file a brief not to exceed five (5) pages addressing whether unfair competition is a separate cause of action under Texas law.  Said briefing shall be filed within seven (7) days of the date of this Memorandum Opinion and Order.  No response, reply, or sur-reply shall be filed without leave from the Court.

**So ORDERED and SIGNED this 19th day of November, 2021.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE