IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| U.S. SILICA COMPANY, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO.  2:20-CV-00298-JRG |
| | § | |
| AMBERGER KAOLINWERKE EDUARD | § | |
| KICK GMBH & CO. KG, | § | |
| | § | |
| *Defendant*. | § | |

MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Amberger Kaolinwerke Eduard Kick GMBH & Co. KG's

("AKW") Renewed Motion Under Fed. R. Civ. P. 50(B) For Judgment as a Matter of Law of

Invalidity for Lack of Enablement (the "Invalidity JMOL Motion") (Dkt. No. 280), AKW's

Renewed Motion for Judgment as a Matter of Law Under Fed. R. Civ. P. 50(b) of No Infringement

And No Willful Infringement (the "Infringement JMOL Motion") (Dkt. No. 283), and AKW's

Renewed Motion for Judgment as a Matter of Law Under Fed. R. Civ. P. 50(B) of No Damages

(the "Damages JMOL Motion") (Dkt. No. 286). Having considered the Invalidity JMOL Motion,

the Liability JMOL Motion, and the Damages JMOL Motion, and for the reasons stated herein,

the Court finds that all three should be **DENIED**.

## I.     BACKGROUND

The Court conducted a jury trial during which Plaintiff U.S. Silica Company ("U.S. Silica")

asserted infringement by AKW of U.S. Silica's U.S. Patent No. 8,865,303 (the "'303 Patent"),

U.S. Patent No. 9,303,407 (the "'407 Patent"), and U.S. Patent No. 10,724,245 (the "'245 Patent")

(the "Asserted Patents"). (Dkt. No. 1, 257). Following the four-day jury trial, a jury returned a

unanimous verdict in U.S. Silica's favor on all counts. (*Id.*). Specifically, the jury's verdict found

1

that AKW willfully infringed in the Asserted Patents, that the asserted claims were not invalid, and awarded U.S. Silica $75,229.00 in damages. (*Id.*). Thereafter, AKW filed its Invalidity JMOL Motion, Infringement JMOL Motion, and Damages JMOL Motion seeking to set aside the jury's verdict. For the reasons set forth herein, the Court does not find that AKW's motions warrant judgment in its favor.

## II.   LEGAL STANDARD

"Judgment as a matter of law is proper when 'a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue.'" *Abraham v. Alpha Chi Omega*, 708 F.3d 614, 620 (5th Cir. 2013) (quoting Fed. R. Civ. P. 50(a)). The non-moving party must identify "substantial evidence" to support its positions. *TGIP, Inc. v. AT&T Corp.*, 527 F. Supp. 2d 561, 569 (E.D. Tex. 2007). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1363 (Fed. Cir. 2004).

"The Fifth Circuit views all evidence in a light most favorable to the verdict and will reverse a jury's verdict only if the evidence points so overwhelmingly in favor of one party that reasonable jurors could not arrive at any contrary conclusion." *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1361 (Fed. Cir. 2018) (citing *Bagby Elevator Co. v. Schindler Elevator Corp.*, 609 F.3d 768, 773 (5th Cir. 2010)). A court must "resolve all conflicting evidence in favor of [the verdict] and refrain from weighing the evidence or making credibility determinations." *Gomez v. St. Jude Med. Daig Div. Inc.*, 442 F.3d 919, 937–38 (5th Cir. 2006).

## III.   DISCUSSION

As set forth below, the Court finds that substantial evidence supports the jury's verdict on each of the grounds raised by AKW.

### a. Invalidity JMOL Motion

AKW moves for judgment as a matter of law that the asserted claims are invalid for lack of enablement. (Dkt No. 280). The asserted claims require calcined kaolin or kaolin chamotte particles with solar reflectance of about 80-92% that, when applied to asphalt, result in cool roofing systems with solar reflectance of 70-82% (or 70% or greater). (*Id*. at 12). AKW argues that "patents must enable the starting materials needed to practice the claims and supply the invention's novel aspects," and yet, the record evidence demonstrates that "the full scope of claimed particles—a required starting material critical for the allegedly inventive reflectance levels of the claimed systems—is not enabled by the sparse disclosures." (*Id*.). AKW further contends that its expert, Dr. Klink, provided "detailed testimony of lack of enablement" and that U.S. Silica's witness, Dr. Weller, "confirmed several points Dr. Klink made on enablement." (*Id*. at 13–17). AKW contends that no U.S. Silica witness rebutted Dr. Klink's testimony and that U.S. Silica "established no basis to discredit Dr. Klink on cross examination." (*Id*. at 17, 18). Finally, AKW argues that "the functional nature of the asserted claims, the breadth of the covered particles and required functionality, and the minimal teachings on particles that meet the functional requirements" support judgment as a matter of law finding a lack of enablement. (*Id*. at 19–21).

U.S. Silica responds that AKW's arguments are tantamount to a disagreement with how the jury weighed the evidence supplied by AKW for its lack of enablement defense, which U.S. Silica contends was "scant." (Dkt. No. 296). US. Silica contends that under the correct standard for lack of enablement[1], AKW failed to offer "any testimony, through Dr. Klink or otherwise, to try to quantify how any potential experimentation to provide another workable granule would be 'undue.'" (*Id*. at 9). Instead, U.S. Silica contends, Dr. Klink identified "commercial names of

---

[1] U.S. Silica argues that AKW misstates the lack of enablement standard as "no" experimentation, as opposed to "undue experimentation." (*Id*. at 7, 8).

known products, geographic source of materials…the specific temperature and particle ranges for the granules, and…suitable coatings." (*Id*. at 10). U.S. Silica argues this testimony, as well as Dr. Klink's "*ipse dixit* statements" that the granules would require one to "go to the lab and do a lot of work" and that "there would be a lot of experimentation," did not meet the clear and convincing evidentiary threshold. (*Id*.). According to U.S. Silica, the trial record, which U.S. Silica contends AKW misstates, lacks "specific factual information to support the claim that any experimentation required is undue, and merely characterizing it as 'undue' without such factual support is insufficient to meet AKW's burden of proof." (*Id*. at 10–13). U.S. Silica's election to not present rebuttal testimony does not mean AKW met its burden of proof as there is no formal burden-shifting framework when addressing the issue of enablement. (*Id*. at 11).

AKW's arguments are unavailing. The thin record on AKW's lack of enablement defense, populated with conclusory testimony, supports the jury's finding that AKW failed to meet its clear and convincing evidentiary burden. Accordingly, AKW's Invalidity JMOL Motion is denied.

**b.  Infringement JMOL Motion**

AKW raises six arguments in support of its contention that claim 9 of the '303 Patent, claim 9 of the '407 Patent, and claims 1–3 of the '245 Patent are not infringed by AKW's Accused Products. (Dkt. No. 283).

First, AKW argues that no reasonable juror could find that any AKW customer directly infringed the sheet reflectance limitations. (*Id*. at 9). The asserted claims at issue require granules applied onto asphalt such that the resulting sheet shows either "about 70% to 82%" ('303 and '407 Patents), "70% or more" ('245 Patent, claims 1 and 3), or "about 70% to about 82%" ('245 Patent claim 2) solar reflectance. (*Id*.). AKW argues U.S. Silica failed to present evidence of infringement of the claims, as written, and instead presented "evidence that AKCool granules are merely capable

4

of achieving the claimed sheet reflectance values, which is legally insufficient to prove direct infringement." (*Id*.). According to AKW, "the only evidence of sheet reflectance that [U.S. Silica] presented was (1) an AKW marketing brochure promoting a potential solar reflectance of >70% (PX292) and (2) conclusory and unsupported statements that generic granules typically lose about 8-10% reflectance when applied to asphalt." (*Id*. at 10). AKW contends this evidence is legally insufficient to establish an act of direct infringement. (*Id*.).

Second, AKW argues that no reasonable juror could find that AKW's customer applied AKCool granules with no surface treatment to an asphalt sheet. (*Id*. at 13). The asserted claims of the '243 Patent require a cool-roofing system with granules having no surface treatment applied to an asphalt layer. (*Id*.). AKW contends that U.S. Silica presented no evidence that AKW's customers "actually applied untreated AKCool granules to asphalt" and that U.S. Silica's fact witness, Dr. Weller, "testified that no customer would *ever* apply an untreated granule to asphalt." (*Id*. at 13).

Third, AKW argues that no reasonable juror could find that any customer directly adhered, adhered, or embedded AKCool granules onto an asphalt sheet because "[U.S. Silica] presented no evidence regarding how any AKW customer applied (or could have applied) granules to their asphalt." (*Id*. at 14). AKW further argues that U.S Silica's expert, Dr. Weinstein, offered a "conclusory opinion that this limitation was met because some images of a roofing sheet from a marketing brochure and a presentation appeared to show granules on an asphalt layer." (*Id*. at 14).

Fourth, AKW argues no reasonable juror could find that AKCool met the calcined kaolin particle limitation. (*Id*. at 15). AKW asserts that the jury should have rejected Dr. Weinstein's testimony related to this claim because he misconstrued claim terms and "this likely led to the jury finding infringement by ignoring the purified fledspar and quartz ingredients in AKCool and

5

focusing solely on the hydrous kaolin ingredient." (*Id*. at 15–18). AKW further contends that no reasonable juror could conclude that AKCool is a calcined kaolin particle under the doctrine of equivalents because Dr. Weinstein's testimony was "conclusory" and was devoid of "an element-by-element analysis." (*Id*. at 18). AKW further challenges Dr. Weinstein's analysis by arguing that "multiple witnesses (from both sides) testified at length regarding the difference between AKCool and a calcined kaolin particle." (*Id*. at 19). AKW also argues that "prosecution history estoppel prevents [U.S. Silica] from proving infringement of the 'calcined…kaolin particles' term through the doctrine of equivalents." (*Id*. at 21).

Fifth, AKW argues that no reasonable juror could find that AKCool meets the kaolin chamotte particles limitation because AKCool is not a kaolin chamotte particle. (*Id*.). AKW contends no reasonable juror could have accepted Dr. Weinstein's "conclusory" testimony on this claim element, in part, because "the asserted claims of the '303 and '407 patents require calcined kaolin particles which 'comprise…kaolin chamotte particles,' and the jury was misled into thinking that the 'comprising' language allowed something other than a kaolin chamotte particle to infringe." (*Id*. at 23). AKW further contends no reasonable juror could conclude that AKCool is a kaolin chamotte particle under the doctrine of equivalents and prosecution history estoppel prevents U.S. Silica from proving infringement under the doctrine of equivalents. (*Id*. at 24).

In addition to its arguments concerning infringement, AKW further argues that no reasonable juror could find that AKW willfully infringed any of the Asserted Patents. (*Id*. at 25). According to AKW, "[U.S. Silica] did not present any evidence or testimony that AKW intentionally or deliberately infringed the asserted claims" and, instead, "[a]bundant evidence shows that AKW always had a good-faith belief that AKCool did not infringe." (*Id*. at 25). AKW also contends that the evidence does not support the jury's verdict because AKW "told third parties

6

that its own lawyers and AKCool did not infringe the asserted patents" and "several third parties independently received information from their lawyers that AKCool did not infringe the asserted patents." (*Id*. at 26).

U.S. Silica responds that AKW's Infringement JMOL Motion should be denied for at least four reasons: (1). AKW failed to challenge the sufficiency of the U.S. Silica's infringement evidence; (2). AKW's attacks on the credibility and reliability of Dr. Weinstein's opinions are tantamount to a late-breaking *Daubert* challenge; (3). AKW is asking the Court to supplant the role of the jury and make credibility determinations about the weight of the evidence; and (4). AKW rehashes arguments that were raised in AKW's claim construction briefing, *Dauberts*, and summary judgment motions, which were previously rejected by the Court. (Dkt. No. 297).

Specifically, U.S. Silica argues that there was more than sufficient evidence to support the jury's conclusions that AKW's customers achieved the claimed reluctance ranges, that AKW's customer's directly adhered, adhered, or embedded AKCool granules onto asphalt roofing sheets, that AKCool is a calcined kaolin granule, that AKCool comprises kaolin chamotte, that AKCool meets the calcined kaolin and kaolin chamotte limitations under the doctrine of equivalents, and that AKCool meets the "do not have a surface treatment" limitation of the '245 Patent. (*Id*. at 9, 10, 15, 20, 23, and 26). U.S. Silica further contends that AKW's challenges to Dr. Weinstein's methodology and opinions regarding the reluctance ranges "were not challenged under *Daubert*, and the weight and credibility of his testimony are matters that fall completely within the purview of the jury." (*Id*. at 13). U.S Silica reminds the Court that certain arguments raised in AKW's Infringement JMOL Motion, however, were already rejected by the Court during claim construction and the pre-trial process. (*Id*. at 15). U.S. Silica disputes that it misled the jury on the meaning of the word "comprising." (*Id*. at 23). In response to AKW's doctrine of equivalents

arguments, U.S. Silica contends that AKW's prosecution history estoppel argument is untimely and inapplicable. (*Id*. at 23, 24). U.S. Silica further contends that sufficient evidence was presented at trial to support U.S. Silica's doctrine of equivalents theory. (*Id*. at 25, 26). Finally, U.S. Silica argues that AKW's awareness of the Asserted Patents, its prior business dealings, and AKW's intentional copying are sufficient to sustain the jury's finding of willful infringement. (*Id*. at 27).

At trial, there was abundant evidence related to the claims of the Asserted Patents, both on direct and cross examination. The record contains more than a sufficient evidentiary basis to support the jury's finding that U.S. Silica proved by a preponderance of the evidence that AKW willfully infringed the Asserted Patents. The jury was entitled to accept Dr. Weinstein's opinions related to AKW's infringement of the Asserted Patents. To the extent AKW is challenging Mr. Weinstein's methodology, which appears to be the case, such a challenge is not appropriate at this post-trial stage. *Versata Software Inc. v. SAP America Inc*., 717 F.3d 1255, 1264 (Fed. Cir. 2013). As to the arguments previously raised by AKW and rejected by the Court, this Court has previously held it is improper to use a JMOL motion as a renewed *Daubert* challenge. *Rembrandt Wireless Techs., LP v. Samsung Elecs. Co., Ltd*., 2016 WL 362540, at *3–4 (E.D. Tex. Jan. 29, 2016). The same is true of claim construction and summary judgment arguments previously rejected by the Court. Finally, the Court agrees with U.S Silica—AKW's prosecution history estoppel argument is both untimely and improper.

### c. Damages JMOL Motion

AKW moves for judgment as a matter of law of no damages on two grounds: (1). a reasonable jury could not have awarded U.S. Silica lost profits; and (2). U.S. Silica's reasonable royalty damages claim could not have been accepted by a reasonable jury. (Dkt. No. 286).

With respect to AKW's first argument, AKW contends the record evidence does not support U.S. Silica's lost profit claim under the *Panduit* factors. (*Id*. at 13). AKW challenges the sufficiency of the evidence presented to support the "absence of non-infringing alternatives" and "the amount of lost profits that would have been made" factors. (*Id*. at 13–17). Regarding the former factor, AKW argues U.S. Silica's damages expert, Ms. Salters, improperly relied on Dr. Weinstein's opinion regarding non-infringing alternatives. (*Id*. at 13, 14). AKW contends that Dr. Weinstein never testified about non-infringing alternatives at trial, and the Weinstein declaration relied upon by Ms. Salters was prepared by Ms. Salter's for Dr. Weinstein's signature. (*Id*.). AKW contends Ms. Salters' lost profit opinion lacks "detail, facts, or supporting evidence" and should have been rejected as an attempt to "back door a technical opinion into the case while depriving AKW of the opportunity to cross-examine [U.S. Silica's] technical witness, Dr. Weinstein, about that opinion during trial." (*Id*. at 14, 15). AKW contends that the only evidence offered at trial regarding non-infringing alternatives came from Dr. Weller who "proffered that 3M sells a non-infringing alternative." (*Id*. at 15). Regarding the "the amount of lost profits that would have been made" factor, AKW contends U.S. Silica "failed to meet its burden of proving the amount of profit that would have been realized" and lacked an explanation of "what costs were deducted to arrive" at a 49% profit margin. (*Id*. at 16).

AKW further contends that judgment as a matter of law of no damages is appropriate because U.S. Silica's reasonable royalty rate of $386 should have been rejected for three reasons. (*Id*. at 17). First, AKW argues the record does not support a $386 royalty rate because Ms. Salter relied upon an unaccepted offer to license and an unsigned license agreement without providing an explanation for why a CRG manufacturer would agree to the rates set forth in the licenses. (*Id*. at 17–21). Ms. Salters, according to AKW, also failed to consider "any adjustment to her royalty

rate based on either the AKW-BASF license or the Houlihan-Lokey valuation." (*Id*. at 21). Second, AKW argues that Ms. Salters failed to tie certain *Georgia-Pacific* factors to the proposed royalty rate. (*Id*. at 22, 23). Finally, AKW argues Ms. Salters' $386 royalty rate represented "approximately twice AKW's profits and AKW itself had previously rejected [U.S. Silica's] offer to license at $450 per ton for sales into the European market." (*Id*. at 23).

U.S. Silica responds that AKW's Damages JMOL Motion should be denied for three reasons: (1). the motion is an "untimely *Daubert* challenge to the admissibility of opinions proffered by U.S. Silica's damages expert"; (2). "[i]n its oral Rule 50(a) motion, AKW did not make several arguments that it now raises in its Rule 50(b) motion" for the first time; and (3). "on the merits, AKW's criticisms merely reflect a difference of opinions between two experts, which the jury resolved in U.S. Silica's favor." (Dkt. No. 294 at 7).

Regarding AKW's attack on the merits of Ms. Salters' lost profit opinion, U.S. Silica responds that AKW "waived this issue" by failing to object to Ms. Salters' testimony, testimony regarding non-infringing alternatives was presented at trial, and AKW's expert, Mr. Napper, "adopted Ms. Salters' 49% profit margin figure as his own in calculating his alternative reasonable royalty." (*Id*. at 19–21). U.S Silica further responds that Ms. Salters' analysis of the $500 Firestone proposed license and the $200 Firestone license was legally and factually proper. (*Id*. at 21–23). Finally, U.S. Silica argues that Ms. Salters' analysis of the *Georgia-Pacific* factors and the licenses relied upon by AKW was a "battle of the experts," and Ms. Salters explained "why she excluded the AKW-BASF license from her analysis," why she decided "not to use the Houlihan Lokey evaluation on cross-examination," and "guided the jury through the *Georgia-Pacific* factors that were relevant to her analysis." (*Id*. at 24).

At the core of AKW's Damages JMOL Motion is a challenge to the methodologies implemented by Ms. Salters and the exhibits she considered. Such challenges to the admission of evidence, which were not raised during pre-trial or at trial, are improper at this stage of the litigation. *Versata Software Inc*., 717 F.3d at 1264. Further, the jury was entitled to weigh all the evidence presented at trial and decide which evidence it found to be most credible. *See Finjan, Inc. v. Secure Computing Corp*., 626 F.3d 1197, 1212 (Fed. Cir. 2010). After such evaluation, the jury found for U.S. Silica. The Court does not find that no reasonable jury could have accepted Ms. Salter's lost profits and reasonable royalty analyses. Where a jury is presented with two conflicting positions at trial and there is reasonable evidence and argument to support both positions, the fact that the jury ultimately found for one party over the other does not support entry of judgment as a matter of law. Such was the case here.

## IV.    CONCLUSION

For the reasons set forth herein, AKW's Invalidity JMOL Motion (Dkt. No. 280), Infringement JMOL Motion (Dkt. No. 283), and Damages JMOL Motion (Dkt No. 286) are **DENIED**.

So ORDERED and SIGNED this 15th day of March, 2023.

RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE