IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| U.S. SILICA COMPANY, § <br> § <br> *Plaintiff*, § <br> § <br> v. § <br> § <br> AMBERGER KAOLINWERKE EDUARD § <br> KICK GMBH & CO. KG, § <br> § <br> *Defendant*. § <br> § | CIVIL ACTION NO.  2:20-CV-00298-JRG |

**MEMORANDUM OPINION AND ORDER**
**SUPPORTED BY FINDINGS OF FACT AND CONCLUSIONS OF LAW REGARDING**
**THE EQUITABLE DEFENSE OF INEQUITABLE CONDUCT**

Before the Court is Defendant Amberger Kaolinwerke Eduard Kick GmbH & Co. KG's ("AKW") Motion Under Rules 52(a) and 58 that the Asserted Patents are Unenforceable Due to Inequitable Conduct. (Dkt. No. 287). The Court has considered the totality of the evidence presented at the jury trial and in the written record, including the post-trial submissions from the parties (Dkt. Nos. 260, 261, 262, 263, 264, 287, 293, 308, 310). The Court now issues this opinion concerning inequitable conduct supported by the following Findings of Fact ("FF") and Conclusions of Law ("CL") pursuant to Fed. R. Civ. P. 52(a)(1) and 52(c). In view thereof and as discussed herein, the Court rejects AKW's inequitable conduct defense and finds that it does not bar enforceability of Plaintiff U.S. Silica Company's ("U.S. Silica") asserted patents, U.S. Patent No. 8,865,303 (the "'303 Patent"), U.S. Patent No. 9,303,407 (the "'407 Patent"), and U.S. Patent No. 10,724,245 (the "'245 Patent") (collectively, the "Asserted Patents"), as well as the non-asserted but related U.S. Patent No. 9,714,512 (the "'512 Patent") and U.S. Patent No. 10,145,115 (the "'115 Patent").

## I. FINDINGS OF FACT

### A. Procedural History

**[FF 1]** This is an action for patent infringement. U.S. Silica sued AKW in September 2020 asserting infringement of U.S. Silica's Asserted Patents. (Dkt. No. 1). Specifically, U.S. Silica alleged that the Asserted Patents are infringed by AKW through its importation, sale and/or offer to sell AKW's product, AKCool granules. (Dkt. No. 1 at ¶¶ 56–107).

**[FF 2]** A jury trial was held during the week of March 21, 2022. (Dkt. No. 251). On March 25, 2022, the jury returned a verdict finding that U.S. Silica had proven by a preponderance of the evidence that AKW infringed at least one of Claim 9 of the '303 Patent, Claim 9 of the '407 Patent, and Claims 1–3 of the '245 Patent (the "Asserted Claims") and that U.S. Silica had proven by a preponderance of the evidence that such infringement was willful. (Dkt. No. 257).

**[FF 3]** The jury also found that AKW had not proven by clear and convincing evidence that any of the Asserted Patents were invalid. (*Id.*). At trial, AKW argued that the Asserted Patents were invalid for lack of enablement and improper inventorship. (E.g., Dkt. No. 264 at 114, 115). The jury found that AKW had not proven invalidity for either theory by clear and convincing evidence. (Dkt. No. 257 at 5). AKW further alleged that U.S. Silica tortiously interfered with one or more of AKW's prospective business relationships. (Dkt. No. 10 at ¶¶ 88–90, 183–194). The jury was not persuaded by this argument and found that U.S. Silica did not tortiously interfere with AKW's prospective business relationship. (Dkt. No. 257 at 9).

**[FF 4]** After the trial, the Court granted a joint motion from the parties requesting briefing on the issue of inequitable conduct. (Dkt. Nos. 277, 278). AKW argues that the Asserted Patents, as well as the '512 Patent and the '115 Patent are unenforceable due to the inequitable conduct of one of the named inventors, Mr. Eric Sexauer. (Dkt. No. 287). U.S. Silica disputes that

Mr. Sexauer engaged in inequitable conduct. (Dkt. No. 293). The Parties submitted, and the Court received and reviewed the parties' respective briefing on this issue. (Dkt. Nos. 287, 293, 308, 310).

### B. The '303 Patent and its Prosecution

**[FF 5]** During the prosecution of the '303 Patent, Mr. Eric Sexauer, one of the named inventors, submitted a declaration (the "Declaration") to the United States Patent and Trademark Office (the "PTO") under 37 C.F.R. § 1.132. (Dkt. No. 293, Ex. 1).

**[FF 6]** The Declaration was submitted in response to the Patent Examiner's concerns about obviousness in view of U.S. Patent Application No. US 2011/0086201 ("Shiao"). (*Id*. at ¶ 19).

**[FF 7]** In the Declaration, Mr. Sexauer provides background on the development of the claimed invention, including his long search for the right material. (*Id*. at ¶¶ 1–9).

**[FF 8]** In that regard, the Declaration identifies AKW's Chamotte AS 45 as an "extremely bright white type of kaolin" that could be used in the patented invention. (*Id*. at ¶ 10).

**[FF 9]** In paragraph 8 of the Declaration, Mr. Sexauer describes his reaction to being told by 3M in 2000 that a cool roofing granule meeting his criteria could not be made. (*Id*. at ¶ 8).

**[FF 10]** In paragraph 9, Mr. Sexauer discusses his multi-year search for a whiter version of calcined clay. (*Id*. at ¶ 9).

**[FF 11]** In paragraph 10, Mr. Sexauer describes meeting with AKW, having a favorable first impression of its AS 45 product, and wanting to test AS 45 for use in the claimed invention. (*Id*. at ¶ 10).

**[FF 12]** In paragraph 11, Mr. Sexauer describes some of the specifications he instructed AKW to use when modifying its existing AS 45 product for use in the claimed invention. (*Id*. at ¶ 11). Specifically, Mr. Sexauer states:

> Under my direction, and with collaboration with my co-inventor, Mr. Kolb, granules of calcined Chamotte AS 45 were prepared by heating kaolin clay noodles at a temperature in the range of about 1100-1600 ◦C, crushing the calcined kaolin to provide kaolin particles, and then screening the calcined kaolin particles to provide calcined kaolin granules having sizes in the range of about .3-2.4 mm. These calcined kaolin Chamotte AS 45 granules have a measured reflectance in the range of about 80-92% when measured in accordance with ASTM C1549 and CRRC-1 using a D&S Reflectometer, Model SSR-ER Version 6 set to air mass of 1.5E-, available from Devices and Services Company, Dallas, TX. The calcined kaolin Chamotte AS 45 granules were then surface treated as described in US '537 (at paragraph [0025] for example) by using an aqueous solution containing surface treatment materials, in this case a solution of SILRES BS3003 as described in US '537 at para. [0029]

(*Id.*).

**[FF 13]**  In his deposition, Mr. Sexauer explained that the phrase "under my direction," in paragraph 11 referred to Mr. Sexauer giving directions as to certain specifications, and AKW manufacturing granules in accordance with those instructions:

> A. I believe that refers to my position as CEO of National Coatings. Everything that National Coatings did, or the work of National Coatings, was under my ultimate direction. And ordering product from the supplier would kind of be the same thing. It's under my direction because I'm giving the order for the material, and they're doing the manufacturing.
>
> Q. And was it actually you, ultimately, as head of NCC, who authorized the direction to AKW to prepare WA11 granules to NCC's specifications?
>
> A. Yes.

(Dkt. No. 293–8 at 204:2-12).

**[FF 14]**  Mr. Sexauer, in his capacity as CEO of National Coating Company, provided direction to AKW as to what kind of product it wanted supplied from AKW. This included directions concerning the coatings of the granules. (Dkt. No. 293-3 at 17:7–25, 18:1–19:13, 50:5–7, 50:12–51:13, 52:13–53:11, 57:2–17; Dkt. No. 293–4 at 147:4–148:11, 152:6–9; Dkt. No. 293–

5; Dkt. No. 293–6; Dkt. No. 293–10; Dkt. No. 293–11; Dkt. No. 293–12; Dkt. No. 293–13; Dkt. No. 293–14; Dkt No. 293–15).

**[FF 15]** In his deposition, Mr. Sexauer provided the following testimony:

> Q. Earlier today we talked about samples of AS 45 that were sent to you from AKW before -- before your meeting with AKW. Do you recall that discussion?
>
> A I recall the discussion about samples of AS 45 being sent to us.
>
> Q And it was on or around the time of your first meeting with AKW in Germany, correct?
>
> A It was around that same time. I don't recall which came first.
>
> Q. Did you in any way direct AKW's manufacturing process of those AS 45 samples that were sent to you?
>
> A. No.
>
> Q. Did Mr. Kolb in any way direct AKW in the manufacture of those samples that were sent to you?
>
> A. Actually, let me back up and correct myself. You know, the thing we may have directed would have been to instruct them on the particle size distribution we needed, because their standard particle sizes did not meet our needs.

(Dkt. No. 293-8 at 97:11–98:5).

**[FF 16]** Based on the record before it, the Court rejects AKW's arguments that Mr. Sexauer's statements in paragraph 11 are unmistakably false or constituted affirmative egregious misconduct.

**[FF 17]** The Court finds that based on the record before it, AKW has failed to establish that Mr. Sexauer's statements in paragraph 11 include a misrepresentation or an omission.

**[FF 18]** The statements in paragraph 11 do not address the Examiner's concerns related to Shiao.

**[FF 19]**   Given the evidence and with all credibility determinations made in favor of U.S. Silica and against AKW, Mr. Sexauer's statements are not but-for material.

**[FF 20]**   The Court finds that AKW has failed to establish that but-for Mr. Sexauer's statements in paragraph 11, the PTO would not have allowed the claim.

**[FF 21]**   The Court finds that AKW has failed to establish that Mr. Sexauer's statements in paragraph 11 were made with a specific intent to deceive.

**[FF 22]**   Based on the record and with all credibility made in favor of U.S. Silica and against AKW, the Court finds that Mr. Sexauer's statements in paragraph 11 were not made with a specific intent to deceive the PTO.

## II.   CONCLUSIONS OF LAW

**[CL 1]**   "In an action tried on the facts without a jury . . . , the court must find the facts specially and state its conclusions of law separately." Fed. R. Civ. P. 52(a)(1). "If a party has been fully heard on an issue during a nonjury trial and the court finds against the party on that issue, the court may enter judgment against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue." Fed. R. Civ. P. 52(c).

**[CL 2]**   The purpose of these findings is to "afford . . . a clear understanding of the ground or basis of the decision of the trial court." *S. S. Silberblatt, Inc. v. U.S. for Use & Benefit of Lambert Corp.*, 353 F.2d 545, 549 (5th Cir. 1965) (internal quotation marks omitted); *see also Schlesinger v. Herzog*, 2 F.3d 135, 139 (5th Cir. 1993) (explaining that trial courts need not "recite every piece of evidence" or "sort through the testimony of . . . dozen[s] [of] witnesses").

**[CL 3]**   In making a particular finding, the district court "does not . . . draw any inferences in favor of the non-moving party and . . . [instead] make[s] a determination in accordance with its own view of the evidence." *Fairchild v. All Am. Check Cashing, Inc.*, 815

F.3d 959, 964 n.1 (5th Cir. 2016) (internal quotation marks omitted). However, a district court still must arrive at each of its factual determinations based on the applicable burden of proof. *In re Medrano*, 956 F.2d 101, 102 (5th Cir. 1992) (reversing the district court because it applied the preponderance of the evidence standard rather than the clear and convincing standard in making its factual determinations under Rule 52).

### A. Inequitable Conduct

**[CL 4]** "To prove inequitable conduct, the accused infringer must provide evidence that the applicant (1) misrepresented or omitted material information, and (2) did so with specific intent to deceive the PTO." *Am. Calcar, Inc. v. Am. Honda Motor Co.*, 651 F.3d 1318, 1334 (Fed. Cir. 2011) (citing *Therasense, Inc. v. Becton, Dickinson and Co.*, 649 F.3d 1276, 1287 (Fed. Cir. 2011) (en banc).

**[CL 5]** Both of these elements must be established by clear and convincing evidence. *Therasense*, 649 F.3d at 1287. *See also Price v. Symsek*, 988 F.2d 1187, 1191 (Fed. Cir. 1993) (clear and convincing evidence "produces in the mind of the trier of fact an abiding conviction that the truth of a factual contention is highly probable" (internal quotation marks omitted)).

**[CL 6]** If the accused infringer meets its burden, then the Court must weigh the equities and decide "whether the applicant's conduct before the PTO warrants rendering the entire patent unenforceable." *Id*.

**[CL 7]** "[A]s a general matter, the materiality required to establish inequitable conduct is but-for materiality." *Id*. at 1291.

**[CL 8]** "To establish materiality, it must be shown that the PTO would not have allowed the claim but for the nondisclosure or misrepresentation." *In re Rousvastatin Calcium Patent Litig.*, 703 F.3d 511, 519 (Fed. Cir. 2012). However, there is "an exception in cases of affirmative egregious misconduct." *Therasense*, 649 F.3d at 1292. "When the patentee has

engaged in affirmative acts of egregious misconduct, such as the filing of an unmistakably false affidavit, the misconduct is material." *Id.* (*citing Rohm & Haas Co. v. Crystal Chem. Co.*, 722 F.2d 1556, 1571 (Fed. Cir. 1983))

**[CL 9]** If there is no affirmative egregious conduct, a party must prove "that the PTO would not have allowed the claim but for the nondisclosure or misrepresentation." *Rousvastatin*, 703 F.3d at 519.

**[CL 10]** Since the Court finds that AKW has not established that Mr. Sexauer misrepresented or omitted material information in his Declaration, [FF16–FF17], the Court need not address the materiality prong. *Therasense*, 649 F.3d at 1290 ("[A] court must weigh the evidence of intent to deceive independent of its analysis of materiality."). Nevertheless, the Court found that the statements in paragraph 11 of the Declaration are not but-for material. [FF19].

**[CL 11]** The Court finds that AKW has not established by clear and convincing evidence that Mr. Sexauer's statements in paragraph 11 were made with the specific intent to deceive the PTO. [FF18, FF20–22],

**[CL 12]** Accordingly, AKW has not established by clear and convincing evidence that Mr. Sexauer committed inequitable conduct during the prosecution of the '303 Patent. (*Id.*).

### III. CONCLUSION

For the reasons stated herein, the Court finds that AKW has failed to meet its burden of clear and convincing evidence to show that the '303 Patent, '407 Patent, '245 Patent, '512 Patent, and the '115 Patent should be unenforceable under the equitable theory of inequitable conduct. Judgment will be entered accordingly.

**So ORDERED and SIGNED this 16th day of March, 2023.**

RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE