IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| U.S. SILICA COMPANY, § | |
| § | |
| *Plaintiff*, § | |
| § | |
| v. § | CIVIL ACTION NO. 2:20-CV-00298-JRG |
| § | |
| AMBERGER KAOLINWERKE EDUARD § | |
| KICK GMBH & CO. KG, § | |
| § | |
| *Defendant*. § | |

**MEMORANDUM OPINION AND ORDER GRANTING INJUNCTIVE RELIEF**

Before the Court is U.S. Silica Company's ("U.S. Silica") Motion for Permanent Injunction, or Alternatively, For an Ongoing Royalty on Future Sales (the "Motion"). (Dkt. No. 282). Having considered the Motion, the related briefing, and the applicable law, the Court is of the opinion that the Motion should be **GRANTED-AS-MODIFIED**.

**I.   BACKGROUND**

  **1.   The Claimed Invention and U.S. Silica's Business**

In 2017, U.S. Silica purchased National Coatings Corporation's ("National Coatings") intellectual property. (Dkt. No. 260 at 178:2–6). National Coatings' patent portfolio included the Asserted Patents.[1] (*Id.* at 178:2–6; 198:20–199:11). Prior to the sale, Amberger Kaolinwerke Eduard Kick Gmbh & Co. KG ("AKW") manufactured calcined kaolin-based granules for National Coatings' roof coating. (Dkt. No. 262 at 162:23–25). National Coatings marketed the product manufactured by AKW as "White Armor." (*Id.* at 163:1–2). Initially after U.S. Silica purchased National Coatings, U.S. Silica relied on AKW to produce the White Armor granules. (Dkt. No. 261 at 244:13–245:7). However, in 2018, U.S. Silica decided to open an operation in

---

[1] The Asserted Patents include U.S. Silica's United States Patent Nos. 8,865,303 (the "'303 Patent"), 9,303,407 (the "'407 Patent"), and 10,724,245 (the "'245 Patent").

order to manufacture its own granules. (Dkt. No. 262 at 64:6–10). To achieve this, U.S. Silica purchased a plant in Georgia. (Dkt. No. 261 at 245:19–246:12). U.S. Silica advised AKW of its purchase of the plant and its intent to shift production of White Armor internally in 2020. (*Id*. at 245:19–246:12). During those discussions, U.S. Silica offered to give AKW a license to sell White Armor to the European market and possibly to the rest of the world. (*Id*. at 247:5–10). AKW rejected U.S. Silica's proposal. (*Id.* at 249:7–9).

        2. **AKW's Business**

Following U.S. Silica's decision to manufacture White Armor internally, AKW unveiled a new product called "AKCool." (*Id*. at 270:5–20). This product is a roofing granule intended to be applied to asphalt/bitumen sheets. (*Id*. at 97:12–98:16). According to AKW's marketing materials, AKCool particles are identical to the White Armor particles in size, reflectivity, and coating. (Dkt. No. 301 at 4). Since 2019, AKW has sold 124 metric tons of AKCool in the United States. (Dkt. No. 262 at 10:10–16).

        3. **Competition between AKW and U.S. Silica**

Following the rollout of the AKCool product, AKW sought to directly compete with U.S. Silica. (Dkt. No. 261 at 249:17–250:13). It aggressively marketed the AKCool product during at least one roofing convention in the United States. (*Id*. at 250:14–252:1). On at least two occasions, AKW sold AKCool to United States roofing manufacturers. (Dkt. No. 262 at 10:17–11:5). U.S. Silica alleged that the sale of AKCool resulted in AKW's customers' direct and indirect infringement of the Asserted Patents. (Dkt. No. 1*). At trial, U.S. Silica demonstrated that Johns Manville and U.S. Ply, who had been U.S. Silica customers, elected to purchase AKCool in lieu of the White Armor product. (Dkt. No. 262 at 10:17–11:5). As a result of AKW's competition, U.S. Silica lost approximately $75,000 in profits to AKW from September 2019 to August 31, 2020. (*Id*. at 28:16–25; Dkt. No. 257 at 7).

### 4. Procedural Posture

Following a four-day trial, the jury returned a unanimous verdict in U.S. Silica's favor on all counts. (Dkt. No. 257). Specifically, the verdict found, among other things, that AKW willfully infringed the Asserted Patents, that the Asserted Claims[2] were not invalid, and awarded U.S. Silica $75,229.00. (*Id.*).

U.S. Silica seeks a permanent injunction enjoining AKW "as well as its subsidiaries, successors, assigns, officers, directors, agents, servants, employees, attorneys, and persons in active concert or participation with them (including any affiliated entities)" from "infringing, directly or indirectly, or inducing infringement of any of the Asserted Claims by making, using, selling, offering, or assisting others in offering the AKCool granule adjudged to have infringed the Asserted Patents or any other cool roofing granule not more than colorably different from the AKCool granule" and from "making, using, selling, offering to sell or inducing any others to make, use, or offer to sell any cool roofing granules like those adjudicated in this case or not more colorably different therefrom." (Dkt. No. 282-1). U.S. Silica further requests that AKW be enjoined from "advertis[ing] or otherwise communicat[ing] that they are permitted to engage in any of the conduct described above." (*Id.*).

## II.     LEGAL STANDARD

The Patent Act provides that in cases of patent infringement, a court "may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283.  To obtain injunctive relief, U.S. Silica must show: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the

---

[2] Claim 9 of the '303 Patent, Claim 9 of the '407 Patent, and Claims 1–3 of the '245 Patent (the "Asserted Claims").

balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Under some circumstances, however, awarding an ongoing royalty for patent infringement in lieu of an injunction may be appropriate. *Paice LLC v. Toyota Motor Corp.*, 504 F.3d 1293, 1314 (Fed. Cir. 2007).

The Court now turns to the *eBay* factors to determine whether, on balance, the principles of equity support the issuance of a permanent injunction in this case.

### III.     DISCUSSION

#### 1. Irreparable Injury

"The essential attribute of a patent grant is that it provides a right to exclude competitors from infringing the patent." *Acumed LLC v. Stryker Corp.*, 551 F.3d 1323, 1328 (Fed. Cir. 2008) (citing 35 U.S.C. § 154(a)(1)). "In view of that right, infringement may cause a patentee irreparable harm not remediable by a reasonable royalty." *Id.* "Price erosion, loss of goodwill, damage to reputation, and loss of business opportunities are all valid grounds for finding irreparable harm." *Celsis In Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012) (citations omitted). Injunctive relief, however, is prospective, requiring "a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again." *City of Los Angeles v. Lyons*, 461 U.S. 95, 96 (1983); *Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363, 1380 (Fed. Cir. 2008) (injunctive relief was improper when the jury's damages award included both a market entry fee and an on-going royalty, by which the patentee had been fully compensated).

Here, the parties substantially disagree about the prospects of future infringement by AKW. AKW concedes, and U.S. Silica acknowledges, that in response to U.S. Silica's allegations of infringement, AKW stopped selling the AKCool product, even before the lawsuit was filed. (Dkt.

4

Nos. 282 at 11; 292 at 12). Nevertheless, AKW argues that it should not be precluded from reentering the marketspace: "this says nothing about the harm to AKW if blocked from the market in perpetuity." (Dkt. No. 292 at 12). Further, AKW argues that the public interest factor disfavors a permanent injunction because the public interest favors competition. (*Id*. at 13). AKW's competition with the White Armor product, however, would necessarily involve AKW selling and marketing a product that has been found to infringe the Asserted Patents. The fact that AKW previously refrained from selling the now established infringing product does not counsel against the finding of an irreparable injury. *See W.L. Gore & Assocs., Inc. v. Garlock, Inc.*, 842 F.2d 1275, 1281-82 (Fed. Cir. 1988), *abrogated on other grounds as recognized in Zoltek Corp. v. U.S.*, 672 F.3d 1309 (Fed. Cir. 2012) ("The fact that the defendant has stopped infringing is generally not a reason for denying an injunction against future infringement unless the evidence is very persuasive that further infringement will not take place.").

An analysis of the prospect of future infringing activities, however, does not end the Court's inquiry under the "irreparable injury" factor. To obtain a permanent injunction, U.S. Silica must demonstrate that it has suffered irreparable harm, and that there exists "some causal nexus" between AKW's infringement and the alleged harm. *See Apple, Inc. v. Samsung Electronics Co., Ltd.*, 678 F.3d 1314, 1324 (Fed. Cir. 2012) ("*Apple I*"). In *Apple I*, the Federal Circuit agreed with the district court that Apple had failed to demonstrate the required causal nexus between Samsung's alleged infringement and Apple's lost sales, as the accused feature — one of many features of a smartphone — did not "drive the demand for the [smartphone] product." *Id.*

AKW argues that U.S. Silica failed to meet the standard set forth in the *Apple* decisions because the jury made no findings on causation, U.S. Silica's damages expert did not testify on the nexus issue, and the only evidence presented by U.S. Silica relates to the White Armor product and not AKW's product. (Dkt. No. 292 at 6–11). U.S. Silica responds that the jury made a finding

5

of causation when it awarded U.S. Silica lost profits. (Dkt. No. 301 at 5). The jury was properly instructed that U.S. Silica must show a causal relationship between the infringement and U.S. Silica's loss of profit to make an award of lost profits. (Dkt No. 264 at 65:20–66:3); *see, e.g., Johnstech Int'l Corp. v. JF Microtechnology SDN BHD*, 2018 WL 3036759, at *2 (N.D. Cal. June 19, 2018), aff'd, 773 F. App'x 623 (Fed. Cir. 2019) (lost profits proved causal nexus). U.S. Silica further responds that its expert's testimony regarding demand for White Armor demonstrated that demand for the cool roofing granules is driven by its patented features. (Dkt. No. 301 at 5). The Court agrees with U.S. Silica. The jury's verdict supports the finding of an established causal nexus. Furthermore, *Apple I* differs significantly from the facts in this case, as the Accused Product here consists of AKW's entire product rather than a single feature within a multi-feature product.

U.S. Silica further argues that due to AKW's infringement, it has suffered loss of market share, sales, business opportunities, as well as price erosion. (Dkt. No. 282 at 8–10). Loss of market share and price erosion are both valid grounds for finding irreparable harm. *See Celsis*, 664 F.3d at 930. U.S. Silica established at trial that it had lost sales to two customers and that AKW offered a comparable, infringing product at a lower price to U.S. Silica's customers. Given the two-competitor market at issue here, U.S. Silica's lost profits demonstrate at least "some causal nexus" between U.S. Silica's loss of market share and the infringing product AKW provided. *See Apple I*, 678 F.3d at 1324. AKW asserts that 3M's presence in the market reflects that this was not a two-competitor market. (Dkt. No. 292 at 10). However, the evidence presented at trial demonstrated that 3M's product does not compete with White Armor or AKCool because it cannot achieve the 70 percent reflectivity threshold. (Dkt. No. 282 at 8). Additionally, documents from U.S. Ply, a customer that switched from U.S. Silica's White Armor product to AKW's AKCool product, support the position that 3M's products would not qualify for U.S. Ply's ongoing projects. (Dkt. No. 301 at 6). However, even if 3M, or some other company, were a competitor in the applicable

space, this would not necessarily prevent U.S. Silica from demonstrating irreparable harm. *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1151 (Fed. Cir. 2011) ("[W]ithout additional facts showing that the presence of additional competitors renders the infringer's harm reparable, the absence of a two-supplier market does not weigh against a finding of irreparable harm.").

In sum, the Court finds U.S. Silica has suffered irreparable harm, and AKW's conduct bears some causal nexus to U.S. Silica's loss of market share and revenue. Thus, U.S. Silica has made the requisite showing under the first *eBay* factor.

### 2. Inadequacy of Remedies at Law

US Silica argues that while the jury's award of a reasonable royalty constitutes adequate compensation for AKW's past infringement, money damages are inadequate to compensate for any future infringement by AKW, as it is difficult to gauge the extent of the harm inflicted by such infringement. (Dkt. No. 282 at 10, 11). In response, AKW argues that the factors that led the Court in *Bright Data* to deny a request for a permanent injunction apply here. (Dkt. No. 292 at 11, 12).

The Court finds that this case is akin to its decision in *Golden Hour*. There, the Court granted Golden Hour's request for a permanent injunction where, as here, there had not been a finding of damages for future infringement, and there were serious concerns regarding Golden Hour's ability to enforce a judgment against the defendant. *Golden Hour Data Sys., Inc. v. emsCharts, Inc.*, 2014 WL 8708239 at *10 (E.D. Tex. March 31, 2014). In contrast, *Bright Data* involved circumstances not present here: Bright Data's damages expert testified that both "lost profit and reasonable royalty damages opinions quantify the financial harm to [Bright Data] that Defendants' infringement has caused."[3] *Bright Data Ltd. v. Teso LT, UAB*, 584 F.Supp.3d 193, 197 (E.D. Tex. 2022).

---

[3] U.S. Silica's damages expert provided no such opinion.

7

The Court has significant apprehension about U.S. Silica's ability to enforce the judgement against a foreign defendant. Furthermore, the representations made in AKW's response give the Court increasing concern that future infringement is possible if not probable. *See W.L. Gore & Assocs., Inc.,* 842 F.2d at 1281-82 ("The fact that the defendant has stopped infringing is generally not a reason for denying an injunction against future infringement unless the evidence is very persuasive that further infringement will not take place."). Accordingly, the Court is persuaded that the second *eBay* factor is met and weighs in favor of a permanent injunction.

### 3. The Balance of Hardships

The balance of hardship favors U.S. Silica, as it has suffered the irreparable injury of loss of market share, revenue, and the right to exclude as a result of AKW's infringement. Further, AKW's suggestion that the entry of a permanent injunction would result in AKW being "blocked from the market in perpetuity" concerns the Court. (Dkt. No. 292 at 12). The entry of a permanent injunction will not affect AKW's ability to sell non-infringing products in the "market." Instead, it will preclude AKW from re-introducing a particular single product into the market that has been found to infringe U.S. Silica's intellectual property. This argument clearly weighs in U.S. Silica's favor. Any effort by AKW to market a product already found to infringe would certainly create significant hardship for U.S Silica.

### 4. The Public Interest

AKW argues that the public's interest in competition disfavors the entry of an injunction. (Dkt. No. 292 at 13, 14). U.S. Silica argues that "[d]enying injunctive relief would encourage additional infringers to enter the market, misappropriate U.S. Silica's intellectual property, and damage U.S. Silica's business." (Dkt. No. 282 at 13). U.S. Silica further argues that the entry of an injunction will encourage respect for patent rights and foster innovation. (*Id*.). *See, e.g., Sanofi-*

8

*Synthelabo v. Apotex, Inc.*, 470 F.3d 1368, 1383 (Fed. Cir. 2006) ("We have long acknowledged the importance of the patent system in encouraging innovation.").

The Court agrees with U.S. Silica: the preservation of intellectual property rights is paramount. While the free market and notions of competition are certainly important, the entry of a tailored permanent injunction precluding AKW from engaging in further infringing conduct does not impede AKW's right to otherwise compete in the market.

## IV.    CONCLUSION

For the reasons stated above, the Court finds that U.S. Silica has met its burden to show all four *eBay* factors favor an injunction. Accordingly, U.S. Silica's Motion is **GRANTED-AS-MODIFIED**[4] and the Court **ORDERS** that within the United States of America, AKW as well as its subsidiaries, successors, assigns, officers, directors, agents, servants, employees, and persons in active concert or participation with AKW (including any affiliated entities) are **PERMANENTLY ENJOINED** from infringing, indirectly or directly, or inducing infringement of any of the Asserted Claims by making, using, selling, offering, or assisting others in offering the AKCool granule which has been adjudged to have infringed the Asserted Patents.[5]

**So ORDERED and SIGNED this 29th day of March, 2023.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE

---

[4] In light of the Court's entry of the requested permanent injunction, the Court does not consider U.S. Silica's alternative request for an ongoing royalty on future sales.

[5] The physical equivalents of the AKCool granule are also enjoined herein to the same extent as the AKCool granule.