IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| U.S. SILICA COMPANY, | § |
| | § |
| *Plaintiff*, | § |
| | § |
| v. | § |
| | § CIVIL ACTION NO. 2:20-CV-00298-JRG |
| AMBERGER KAOLINWERKE EDUARD KICK GMBH & CO. KG, | § |
| | § |
| *Defendant*. | § |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff U.S. Silica Company's ("U.S. Silica") Motion for Attorneys' Fees (the "Motion"). (Dkt. No. 319). Having considered the briefing, case record, and relevant authorities, the Court is of the opinion that the Motion should be **DENIED** for the reasons set forth herein.

### I. BACKGROUND

U.S. Silica brought suit against Amberger Kaolinwerke Eduard Kick Gmbh & Co. KG ("AKW") for patent infringement alleging that AKW infringed U.S. Patent Nos. 9,303,407 (the "'407 Patent") 8,865,303 (the "'303 Patent"), and 10,724,245 (the "'245 Patent") (collectively, the "Asserted Patents "). (Dkt. No. 1). Following a four-day trial, the jury returned a unanimous verdict in U.S. Silica's favor on all counts. (Dkt. No. 257). Specifically, the verdict found, among other things, that AKW willfully infringed the Asserted Patents, that the Asserted Claims were not invalid, and awarded U.S. Silica $75,229.00. (*Id*.). The Court then entered a Final Judgment in accordance with the jury's verdict and granted U.S. Silica's request for a permanent injunction (Dkt. No. 317).

U.S. Silica filed the instant Motion arguing that AKW's litigation conduct, weak litigation positions, motivation to harm U.S. Silica, and the jury's decisive verdict, including its finding of willful infringement, make this an exceptional case warranting the recovery of attorneys' fees under 35 U.S.C. § 285. (Dkt. No. 319). U.S. Silica seeks an award of its attorneys' fees in the amount of $4.4 million. (*Id.* at 19).

## II.     LEGAL STANDARD

In "exceptional cases," a district court "may award reasonable attorney fees to the prevailing party" pursuant to the Patent Act. 35 U.S.C. § 285. An "exceptional case" is "simply one that stands out from others with respect to the substantive strength of a party's litigating position . . . or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014); *see also Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 134 S. Ct. 1744, 1748 (2014) (noting that "the word 'exceptional' in § 285 should be interpreted in accordance with its ordinary meaning" (citing *Octane Fitness*, 134 S. Ct. at 1755)). Notably, it is not necessary that the litigation conduct at issue be independently sanctionable, e.g., because it involves bad faith or some other misconduct. *See id.* at 1756–57 (holding that "a district court may award fees in the rare case in which a party's unreasonable conduct—while not necessarily independently sanctionable—is nonetheless so 'exceptional' as to justify an award of fees").

The Supreme Court has been clear that district courts must determine whether any particular case is "exceptional" in a "case-by-case exercise of their discretion, considering the totality of the circumstances." *Octane Fitness*, 134 S. Ct. at 1756. Whether a case is "exceptional" or not "is a factual determination," *Forcillo v. Lemond Fitness, Inc.*, 168 F. App'x 429, 430 (Fed. Cir. 2006), and the court must make its discretionary determination by a "preponderance of the

evidence." *Octane Fitness*, 134 S. Ct. at 1758 (rejecting the prior requirement that a patent litigant establish its entitlement to fees under § 285 by "clear and convincing" evidence). A district court's determination of whether a case is "exceptional" under § 285 is reviewed for an abuse of discretion. *See Highmark Inc.*, 134 S. Ct. at 1748; *see also Checkpoint Sys., Inc. v. All-Tag Sec. S.A.*, 858 F.3d 1371, 1374 (Fed. Cir. 2017) ("On appeal, all aspects of a district court's § 285 determination are reviewed for an abuse of discretion." (citation omitted).

In assessing the "totality of the circumstances," courts may consider factors such as "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Octane Fitness*, 134 S. Ct. at 1756 n.6 (citing *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.9 (1994)) (addressing a similar fee-shifting provision in the Copyright Act). While a party's conduct need not be independently sanctionable to warrant an award of fees under § 285, *Id*. at 1756–57, fee awards should not be used "as a penalty for failure to win a patent infringement suit." *See id*. at 1753 (quotation omitted); *see also Checkpoint Sys., Inc.*, 858 F.3d at 1376.

While an exceptional case finding is no longer constrained to "inequitable conduct before the PTO; litigation misconduct; vexatious, unjustified, and otherwise bad faith litigation; a frivolous suit or willful infringement," *Epcon Gas Sys., Inc. v. Bauer Compressors, Inc.*, 279 F.3d 1022, 1034 (Fed. Cir. 2002), "the absence of such conduct also weighs against an award" of fees under § 285. *AstraZeneca AB v. Aurobindo Pharma Ltd.*, 232 F. Supp. 3d 636, 649 (D. Del. 2017).

### III. DISCUSSION

There is no dispute that U.S. Silica is the prevailing party in this case. (*See* Dkt. No. 257). As such, the Court proceeds to consider "whether [this] case is 'exceptional' in the case-by-case

exercise of [its] discretion, considering the totality of the circumstances." *Octane Fitness*, 134 S. Ct. at 1757.

U.S. Silica raises five arguments in support for its request of an exceptional case finding: (1) AKW engaged in poor litigation conduct; (2) AKW's litigation position was weak and its defenses were objectively unreasonable; (3) the case was not close and the jury sided with U.S. Silica decisively; (4) AKW was motivated to harm U.S. Silica; and (5) AKW willfully infringed the Asserted Patents. (Dkt. No. 319). The Court addresses each argument in turn.

### A. AKW's Litigation Conduct

US. Silica contends AKW engaged in "poor" litigation conduct. (Dkt. No. 319 at 7). U.S. Silica raises eleven complaints regarding AKW's conduct. First, it complains that AKW withheld requested documents and information concerning the composition of AKCool until after discovery closed and initial expert reports had issued. (*Id.*). Second, it contends AKW engaged in gamesmanship by requiring U.S. Silica to take the entirety of AKW's corporate representative depositions in German and falsely insisting the AKW witnesses had "no command of English." (*Id.* at 8). Third, AKW purportedly presented invalidity arguments in an attempt to confuse the jury. (*Id.* at 9). Specifically, U.S. Silica cites AKW's reliance on U.S. Patent No. 10,259,974 ("the AKW Patent") as prior art and invalidity theories regarding the '493 Patent that "were clearly motivated by a desire to confuse the jury into thinking AKCool's current formulation is not patented." (*Id.*). Fourth, U.S. Silica contends AKW's witnesses presented testimony regarding their customers and product that "stretche[d] the limits of credibility." (*Id.* at 9, 10). Fifth, AKW allegedly presented a non-infringement theory that had been rejected by the Court during claim construction. (*Id.* at 10). Sixth, AKW presented a "failed" inventorship invalidity theory even after the purported inventor, Dr. Mirke, testified that he did not claim to be the inventor. (*Id.*). Seventh,

AKW presented a prior sale invalidity defense "on the position that Messrs. Sexauer and Kolb invented the claimed subject matter prior to meeting AKW and Dr. Mirke, which contradicted AKW's inventorship story that the claimed subject matter was invented after the initial meeting with AKW and Dr. Mirke." (*Id*. at 11). Eighth, AKW continued to assert its failed inventorship position after trial, requiring the parties to brief its inventorship-based inequitable conduct defense. (*Id*.). Ninth, AKW's conduct resulted in needless expense and lost time. (*Id*. at 12). In particular, U.S. Silica cites AKW's dropping of AKW's anticipation defense the night before AKW's invalidity expert testified during trial, AKW's dropping of its prior sale and obviousness invalidity theory the Tuesday of trial week, and AKW limiting, during the trial, its validity defense to Claim 1 for the 493 Patent. (*Id*.). Tenth, U.S. Silica contends that AKW's suggestion that "AKW had a legal opinion that its product did not infringe by repeatedly referencing what AKW knew the asserted patents 'covered' or did not 'cover' at the time of development" violated Agreed MIL 10. (*Id*. at 13). Finally, U.S. Silica asserts AKW's counsel injected an "inappropriate attorney opinion on the basis of personal knowledge not in evidence" during his closing. (*Id*.).

AKW responds that U.S. Silica's laundry list of complaints lacks merit. (Dkt. No. 331 at 7). First, AKW contends U.S. Silica does not and cannot claim prejudice or impairment of its infringement case based on the timing of some of AKW's document production. (*Id*. at 7). Second, the Court already considered U.S. Silica's German interpreter objection and found that AKW's witnesses could testify with the aid of an interpreter. (*Id*. at 8). Third, AKW characterizes its invalidity case as robust, well-supported, and unrebutted. (*Id*.). Fourth, AKW's witnesses testified based on their personal knowledge and did not lack credibility because they did not know the specifics of their customers' manufacturing processes or the resultant reflectivity of their customers. (*Id*. at 9). Fifth, AKW's expert testified about the plain and ordinary meaning of the

claim terms and did not violate the Court's claim construction. (*Id*. at 9, 10). Sixth, AKW contends U.S. Silica takes Dr. Mirke's statement that he "did not seek to be named an inventor" out of context, conflating invalidity under 35 U.S.C. § 102(f) with correcting inventorship under § 256. (*Id*. at 10). Regarding U.S. Silica's seventh and eighth points, AKW responds that its prior-sale inventorship theory was a necessary alternative to AKW's inventorship defense and that AKW decided, based on how the testimony had been presented to the jury, to drop this defense during trial. (*Id*. at 11). Further, the inequitable conduct defense was not related to the inventorship defense. (*Id*.). In response to U.S. Silica's ninth point, AKW responds that U.S. Silica "dropped its entire case for two patents altogether and five asserted claims for the three patents it took to trial just weeks before trial began" and, therefore, cannot complain about incurring expenses related to dropped defenses. (*Id*.). Regarding U.S. Silica's final two points, AKW contends that it did not imply that AKW had or relied upon a legal opinion and counsel's discussion of his conversation with his client was not "attorney opinion." (*Id*. at 12).

### B. AKW's Litigation Positions

U.S. Silica describes AKW's litigation position as "weak" and its defenses "objectively unreasonable." (Dkt. No. 319 at 13). This purported weakness is demonstrated, according to U.S. Silica, by the fact that the evidence demonstrated that AKW deliberately copied U.S. Silica's patented technology and knew it was doing so. (*Id*. at 14). In support for its "objective unreasonableness" allegation, U.S. Silica cites the fact that before the lawsuit, AKW told customers that the product manufactured by AKW for U.S. Silica was "100 percent" under U.S. Silica's patent rights, and AKW raised no invalidity challenges at the time. (*Id*.). Further, during trial, AKW did not present a written opinion of counsel in support of its enablement and

inventorship defenses and the supposed inventor admitted, among other things, that he could not testify to the substance of the patent or the language of the claims. (*Id.*).

AKW claims its defenses were more than reasonable. (Dkt. No. 331 at 12). With respect to its non-infringement position, AKW claims it created a ceramic granule that it believed did not infringe U.S. Silica's Asserted Patents. (*Id.*). The evidence at trial demonstrated that AKW believed it did not infringe and that AKW affirmatively sought to avoid copying U.S. Silica's patents, evidenced by the six years it took AKW to develop AKCool. (*Id.*). AKW also cites the fact that it voluntarily sent samples of its product to U.S. Silica before litigation began. (*Id.* at 13). AKW further disputes that the evidence demonstrates that it held indemnification agreements over customer's heads. (*Id.* at 13). Instead, the evidence, according to AKW, demonstrated that customers were requesting indemnity from AKW. (*Id.*). Regarding AKW's invalidity positions, "it would have defied logic for AKW to challenge the validity of its then-business-partner's patents, especially when it had a good-faith belief in noninfringement." (*Id.* at 14). Further, AKW contends it provided significant testimony from Dr. Harber regarding AKW's invalidity positions. (*Id.*). With respect to AKW's enablement and inventorship challenges, AKW contends it was not required to produce an opinion of counsel. (*Id.* at 15). Dr. Klink's trial testimony, according to AKW, regarding the lack of enablement was unrebutted. (*Id.*). Further, and with respect to AKW's inventorship defense, "AKW never intended to add Dr. Mirke to the patents as an inventor, so any assignment of rights would be immaterial to AKW's defense." (*Id.*).

### C. The Jury's Verdict

U.S. Silica alleges that the jury's verdict, which was completely in U.S. Silica's favor, demonstrates that there was never any "closeness of the question" in this case. *WPEM, LLC v.*

*SOTI Inc.*, No. 2:18-CV-00156-JRG, 2020 WL 555545, at *3 (E.D. Tex. Feb. 4, 2020). (Dkt. No. 319 at 16).

AKW disputes such characterization. (Dkt. No. 331 at 15). According to AKW, this case was close. (*Id.*). In support for this position, AKW cites the Court's denial of U.S. Silica's motion to dismiss AKW's counterclaims, Dkt. 101; U.S. Silica's withdrawal of a motion to compel discovery after AKW had drafted a response to the motion, Dkt. 106; the Court's denial of U.S. Silica's motion to dismiss AKW's counterclaim of invalidity of the '493 patent, Dkt. 248 at 2; the Court's denial-in-part of U.S. Silica's motion for summary judgment on AKW's tortious interference counterclaims, *id.* at 2–3; the Court's denial of U.S. Silica's motion to exclude AKW's expert's opinions, *id.* at 3–4; the Court's granting of AKW's motion to exclude U.S. Silica's expert's product-by-product infringement analysis, which was the majority of his opinion, *id.* at 3; and U.S. Silica's withdrawal of two patents claims that were the subject of AKW's motion for partial summary judgment of noninfringement, Dkt. 234. (*Id.* at 17). Furthermore, AKW contends the fact that the jury found infringement is irrelevant to the exceptional case analysis. *Checkpoint Sys.*, 858 F.3d at 1376 ("fee awards are not to be used as a penalty for failure to win a patent infringement suit.") (quotation omitted). (*Id.* at 15).

### D. AKW's Alleged Motivation to "Harm" U.S. Silica

U.S. Silica alleges AKW had a motivation to "harm" U.S. Silica. (Dkt. No. 319 at 16). According to U.S. Silica, AKW's efforts to invalidate U.S. Silica's patents were motivated by an effort to retaliate and directly compete against U.S. Silica. (*Id.*). Indeed, U.S. Silica contends AKW's CEO testified that retaliation was a primary goal of AKW's invalidity arguments. (*Id.* at 17). U.S. Silica contends that AKW's requests for indemnification from U.S. Silica's customers demonstrated that "AKW knew that its only shot of diverting market share from U.S. Silica was

to falsely suggest its AKCool product did not infringe the Asserted Patents." (*Id*.). This evidence, according to U.S. Silica, supports the finding that AKW was motivated to harm U.S. Silica, a fact that makes this case exceptional. (*Id*.).

AKW disputes this allegation. (Dkt. No. 331 at 16). AKW contends that it had a successful business relationship with U.S. Silica and that the evidence at trial reflected that AKW even "helped [U.S. Silica] when it had no contractual reason to do so." (*Id*.). Further, AKW contends it had every right to defends itself against U.S. Silica's allegations by asserting invalidity of U.S. Silica's Asserted Patents. (*Id*.). Finally, AKW challenges the assertion that it was attempting to divert market share from U.S. Silica as AKW stopped selling AKCool after a few months it was not improper to market a competitive product with a good-faith belief in noninfringement. (*Id*.).

### E. Willfulness

U.S. Silica contends that the jury's finding of willfulness further demonstrates that this is an exceptional case. G*eorgetown Rail Equip. Co. v. Holland L.P.*, No. 6:13-CV-366, 2016 WL 3346084, at *22 (E.D. Tex. June 16, 2016). (Dkt. No. 319 at 17).

AKW responds that an enhanced damages award and willfulness finding do not make a case exceptional. *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 2:14-cv-00912-JRG, 2020 WL 1478396, at *2–*3, (E.D. Tex. March 26, 2020). (Dkt. No. 331 at 17). While willful infringement and exceptional-case status sometimes involve common facts, "it is wrong to equate the two." *Id.*

### IV.   ANALYSIS

The Court finds that this case is not exceptional based on the totality of the circumstances. The arguments and evidence raised by U.S. Silica do not demonstrate by a preponderance of the evidence that AKW's position at trial was frivolous, ill-motivated, or was objectively unreasonable.

Beginning with U.S. Silica's complaint that AKW engaged in "poor litigation conduct," the Court is not persuaded that AKW, or its counsel engaged in egregious conduct that would warrant an exceptional case finding. To the extent U.S. Silica believed that AKW's conduct during the trial was improper, it should have objected to such conduct. U.S. Silica does not and cannot cite to any sustained objection related to "poor litigation conduct" raised during trial. With respect to U.S. Silica's complaint regarding document production, to the extent U.S. Silica was prejudiced by the late disclosure of documents, the appropriate time to raise such prejudice would have been before the trial started, and not in a post-trial request for attorneys' fees. Furthermore, that U.S. Silica and its expert disagreed with AKW's invalidity and infringement theories is not a basis to find litigation misconduct. U.S. Silica's arguments concerning dropped defenses also fails. The Court notes that an award of attorneys' fees under § 285 generally should be limited to compensating "for the extra legal effort to counteract the misconduct." *Precision Links Inc. v. USA Prods. Group, Inc*., 527 Fed. App'x 852, 858 (Fed. Cir. 2013). U.S. Silica does not cite to any "extra legal effort" required to counteract AKW's alleged misconduct. Furthermore, the Court notes that U.S. Silica substantially narrowed its case just a few weeks before the trial setting via the dismissal of two patents and five asserted claims for the three patents it took to trial. This conduct by U.S. Silica in dropping its claims on the cusp of trial also factors into the Court's analysis, both as to U.S. Silica's complaint about AKW's dropped defenses and in a broader sense, the totality of the circumstances.

With respect to U.S. Silica's contention that AKW maintained a "weak" litigation positions, if such positions were so objectively weak or unreasonable, U.S. Silica should have moved for summary judgment on these "weak" or "unreasonable" theories. Such decision not to move for summary judgment by U.S. Silica suggests that it did not always view these theories as "weak" or "unreasonable." *See Stragent, LLC v. Intel Corp.*, No. 6:11-cv-421, 2014 WL 6756304, at *5 (E.D.

Tex. Aug. 6, 2014) ("There is little injustice in forcing Intel to bear its own attorney's fees for defending a claim it did not challenge on summary judgment."). To the extent such theories were contemplated in U.S. Silica's pre-trial motions, and if such theories survived the pretrial practice, then the Court has already determined such theories to not be overtly "weak" or "unreasonable."

Regarding the jury's verdict, the fact that the jury did not agree with AKW does not make this an exceptional case. As confirmed by the Supreme Court in *Octane Fitness*, the standard for an exceptional case should not be so high as to make § 285 superfluous, but neither should it be so low as to eviscerate the longstanding "American rule" against fee-shifting. 572 U.S. at 557. What constitutes an exceptional case should not become part and parcel of losing a hard-fought and contentious trial. *Checkpoint Sys., Inc.,* 858 F.3d at 1376. Attorneys' fees should not be awarded because a party made unsuccessful arguments. *Whirlpool v. TST Water, LLC*, 2018 WL 1536874, at *11 (E.D. Tex. Mar. 29, 2018). Although AKW did not prevail, fee awards are "not to be used 'as a penalty for failure to win a patent infringement suit'" but rather "to address unfairness or bad faith in the conduct of the losing party." *Checkpoint Sys., Inc*., 858 F.3d at 1376.

Finally, while the Court is mindful of the jury's finding of willfulness, which the Court has already taken into account in enhancing damages, the Court does not find that AKW's willfulness in this case goes so far as to make AKW's litigation position so meritless as to stand out from the norm. In the same vein, the Court already considered AKW's conduct and the parties' respective positions in the marketplace in issuing a permanent injunction.

Taking all relevant factors into account, the Court is not persuaded that this is an exceptional case. Exceptionality is a high bar, *Nantkwest, Inc. v. Iancu*, 898 F.3d 1177, 1182 (Fed. Cir. 2018). Ultimately, in light of the totality of circumstances, which this Court observed first-

hand, the Court concludes that this case is not exceptional under § 285, and U.S. Silica is not entitled to its attorneys' fees.

## V. CONCLUSION

Based on a careful consideration of the totality of the circumstances before it, the Court finds that this is not an exceptional case, and an award of attorneys' fees to U.S. Silica is not warranted. Accordingly, U.S. Silica's Motion for Attorneys' Fees (Dkt. No. 319) is **DENIED**.

**So Ordered this**
**Aug 15, 2023**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE